# Care of Incompetents in State Hospitals

KANE, Attorney General, RAINS, Deputy Attorney General, and YAKOWICZ, Solicitor General, March 1, 1977 — By letter dated February 17th, you have asked our opinion on several interrelated questions concerning implementation of the Mental Health Procedures Act of July 9, 1976, P.L. 345 (No. 143) (hereinafter "Act 143"). Because of the nearness of March 6, 1977, the effective date of the act as to those already undergoing involuntary treatment, I am issuing this opinion treating the first two questions which involve the department's responsibilities as of then. The answers to the other questions will be forthcoming.

1. What action must be taken regarding mentally ill persons in State mental facilities who were legally committed under the Mental Health and Mental Retardation Act of October 20, 1966, P.L. Spec. Sess., 96, 50 P.S. §4011 et seq. (hereinafter "MH/MR Act of 1966"), for whom recommitment petitions are filed under section 304 of Act 143, which petitions have not been adjudicated by the courts as of March 6, 1977?

Any committed person in this category, who, in the opinion of the superintendent of the State mental hospital, meets the commitment criteria of Act 143, should be kept in custody and treatment pending court action.

Your request indicates that these individuals were committed under sections 406, 408, 410 or 411 of the MH/MR Act of 1966, 50 P.S. §§ 4408, 4410 or 4411. Section 502 of Act 143 purports to repeal those sections, among others, of the MH/MR Act, "except in so far as they relate to

mental retardation or to persons who are mentally retarded."

Section 501 of Act 143 provides:

"Effective Date and Applicability. This act shall take effect 60 days after its enactment and shall thereupon apply immediately to all persons receiving voluntary treatment. As to all persons who were made subject to involuntary treatment prior to the effective date, it shall become applicable 180 days thereafter."

The sixtieth day was September 7, 1976, and the one hundred and eightieth day thereafter will be March 6, 1977. Thus, clearly, on March 6, 1977, the sections of the MH/MR Act under which this group of patients were committed are repealed, and Act 143, by its terms,

"establishes rights and procedures for all involuntary treatment of mentally ill persons . . .": Section 103.

Under Act 143, the mentally ill may be committed by a court of common pleas for treatment for periods not to exceed 90 days: Section 304.[1] Act 143, therefore, mandates repeated hearings in the case of the long-term mentally ill, rather than indefinitely long commitments.

Your request indicates that the Department of Public Welfare's State hospitals have been reexamining patients and filing petitions for recommitment under section 304 if continued custody and treatment are indicated under the standards established by Act 143. Approximately 7,000 involuntarily committed patients have been re-

---

1. Individuals who have been charged with certain crimes may be committed for a period not to exceed one year under section 304(g).

examined as part of this process. You add, "I am assured that all such petitions will be filed by March 6, 1977, with most filed substantially earlier." This action is an entirely proper effort on the part of the department to effectuate section 103 of Act 143 to make the act applicable to committed individuals.

You expect that court action to grant or deny these petitions will be taken in the vast majority of cases prior to March 6, 1977. However, some cases may not be adjudicated by that date. The practical question then will be: Does the repealer of the commitment sections of the MH/MR Act of 1966 void commitments made thereunder so that the State hospitals must release persons who have not been recommitted?

The answer is, simply, no. Subsequent legislation does not retroactively vitiate proper judicial orders entered under previous legislation. Not only would the legislative overturning of judicial acts violate the principle of separation of powers, but it is also specifically proscribed by the Statutory Construction Act:

Effect of repeal on rights, et cetera.

"The repeal of any civil provisions of a statute shall not affect or impair any act done, or right existing or accrued . . .": 1 Pa. C. S. A. §1976(a).

Furthermore, there is no indication in Act 143 of an intention to void prior commitments.[2]

---

2. It should be noted that Goldy v. Beal, No. 75-791 Civil (U.S.D.C. M.D. Pa., July 8, 1976), which declared unconstitutional section 406 of the MH/MR Act, similarly does not require the release of persons committed thereunder. "Plaintiffs . . . are not asking this Court to order their release from custody. . . . (T)hey merely seek a declaration that the statute under which they were committed is unconstitutional and an

In a memorandum, dated February 14, 1977, urging all president judges to schedule Act 143 hearings as rapidly as possible, the Honorable Alexander F. Barbieri, Court Administrator of Pennsylvania, addressed this issue as follows:

"If the petitions have been filed but have not been heard by that date [March 6, 1977], an appropriate petition would have to be filed by the presently committed person to challenge his continued custody, as Act 143 must be interpreted to insure continuity of treatment. Further, in line with the principle that the Legislature would not intend to create an absurd result, the automatic release of all previously involuntarily committed persons should not occur. The same result would apply when the Legislature repeals a criminal statute after persons are convicted and sentenced under it. Such persons do not obtain release without undertaking appropriate legal proceedings to challenge custody . . . .

"Further, the Legislature cannot nullify previously entered judicial orders authorized by statute when entered, as it can only impose reasonable limitations on the coordinate branch of government, the Judiciary."[3]

---

injunction enjoining defendants from enforcing and executing the statute in its present version; if this Court rules in their favor, they will then seek release in state court". Slip Opinion, p. 11.

3. A copy of this memorandum is attached. It is as follows:

The Mental Health Procedures Act, Act 143 of 1976, 50 P.S. 7101, et seq., provides a new set of commitment procedures which become effective on March 6, 1977 as to all persons involuntarily committed before September 8, 1976. All involuntary commitments thereafter ordered must be for a term certain not to exceed 90 days in most instances but re-

We concur in this view.

The language of section 501, that Act 143 is applicable on March 6, 1977, to all persons previ-

---

newable for subsequent 90-day periods after appropriate hearing.

Most involuntary commitments under the Mental Health and Mental Retardation Act of 1966, most notably under Section 406, were for indefinite terms. All individuals who were committed involuntarily under the 1966 Act must be made subject to a new commitment proceeding under Act 143. The Department of Public Welfare has filed those petitions in advance of the effective date of the new act. Your court should make every effort to dispose of those petitions before March 6, 1977.

If the petitions have been filed but have not been heard by that date, an appropriate petition would have to be filed by the presently committed person to challenge his continued custody, as Act 143 must be interpreted to insure continuity of treatment. Further, in line with the principle that the Legislature would not intend to create an absurd result, the automatic release of all previously involuntarily committed persons should not occur. The same result would apply when the Legislature repeals a criminal statute after persons are convicted and sentenced under it. Such persons do not obtain release without undertaking appropriate legal proceedings to challenge custody. The Department of Public Welfare has requested an opinion from Attorney General Kane as to the authority of that Department to hold previously committed individuals after March 6, 1977 when a new commitment order has not yet been entered.

Further, the Legislature cannot nullify previously entered judicial orders authorized by statute when entered, as it can only impose reasonable limitations on the coordinate branch of government, the Judiciary. Hearings conducted pursuant to Act 143 involving petitions for continued involuntary commitments for persons already institutionalized should be scheduled as rapidly as is possible, consistent with the other demands on your court. As to persons involuntarily committed under the new act since September 8, 1976, for a limited period, your court should cooperate with the Department of Public Welfare to give priority to these hearings.

ously subject to the involuntary treatment is not wholly self-executing. Article IV of Act 143 provides commitment procedures that only the courts can apply to the mentally ill. Until a court does so, a prior commitment under the MH/MR Act remains applicable.

The Department is mandated to do all it can to make Act 143 applicable by March 6, 1977, to the mentally ill involuntarily within its State hospitals. It does this by bringing petitions under Act 143 for their recommitment. Further, section 501 requires the Department to apply the treatment provisions in Article I of Act 143 to all involuntarily committed mentally ill patients, including those who have not yet been recommitted under Act 143, as of then.

Accordingly, you are advised that such lawfully committed mentally ill individuals remain subject to the custody and treatment of the Department in State hospitals after March 6, 1977, pursuant to the commitments under the MH/MR Act of 1966, until such time as there is further court action regarding them. Indeed, the original commitment orders imposed a duty upon the Department to provide necessary care for such individuals.

2. What action does Act 143 mandate regarding persons who are presently in State mental hospitals under the MH/MR Act of 1966 who are mentally retarded, senile, alcoholic or drug dependent but who are not mentally ill?

Nothing. Act 143 has no effect upon such people. Act 143, as its title states, is a procedures act which tells the Department of Public Welfare how to deal with the mentally ill. As noted above, section 103 of Act 143 provides:

"Scope of Act — This act establishes rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons . . ."

Persons who are not mentally ill are specifically excluded from any coverage under Act 143:

"Persons who are mentally retarded, senile, alcoholic or drug dependent shall receive mental health treatment only if they are also diagnosed as mentally ill, but these conditions of themselves shall not be deemed to constitute mental illness." Section 102.

Act 143 has no requirements regarding such individuals. It does not require State mental hospitals to separate them from hospitals' mentally ill population. Nothing in section 105, Treatment Facilities, suggests that such facilities must treat the mentally ill exclusively and may not also house and treat other individuals. Thus, it does not require the removal from State hospitals of properly committed individuals.

Individuals who are mentally retarded, senile, alcoholic or drug dependent could not be committed under Act 143 unless they are otherwise mentally ill. Also, section 502 of Act 143 prevents future commitments under the MH/MR Act of 1966 of persons in these categories, except the mentally retarded. However, for all the reasons set forth in the answer to Question 1, above, Act 143 does not invalidate past commitments under the MH/MR Act of 1966 of these individuals nor exempt the

Department from its duty to care for such individuals.

You indicate that State hospitals are now in the process of identifying such persons and actively preparing discharge plans for them, which include the difficult task of identifying appropriate alternative settings for such persons, and that no recommitment petitions will be filed for such persons. It is our opinion, and you are so advised, that by their commitments of these individuals under the MH/MR Act of 1966, the courts have imposed upon the State hospitals the duty to continue to provide care and treatment for such persons after March 6, 1977, pending effectuation of discharge plans.

It is entirely proper for the Department to be discharging from its State mental hospitals the senile, alcoholic and drug dependent population who are not otherwise mentally ill because the General Assembly has indicated in Act 143 that such people should not be committed in the future. This is a clear legislative indication that the Department is supposed to get out of the business of providing custodial care for such persons in its mental hospitals. Accordingly, the Department should vigorously continue its efforts to discharge them to appropriate alternative placements.

However, we can find no legal reason for the discharge of the mentally retarded inasmuch as section 502 of Act 143 specifically preserves the provisions of the MH/MR Act of 1966 regarding them. Therefore, you are further advised that Act 143 cannot be read to mandate any shift in the mentally retarded population in the State mental hospitals.